May it please the Court, Your Honors, Daniel Summers on behalf of the appellants, the plaintiffs below. With the Court's permission, I'd like to reserve two minutes for rebuttal. Please try to keep track. I will do that, Your Honor. The District Court's order dismissing plaintiffs' claims under Section 11 of the Securities Act of 1933 should be reversed for three reasons. First, the order improperly dismissed the claim because it found plaintiffs failed to allege facts suggesting that defendants quote, knew that the information provided, close quote, in the financial statements was false. Section 11 of the Securities Act, however, contains no requirement for pleading intent, scienter, or state of mind of any type. It requires only the pleading of a false statement and that that false statement was material. The District Court cited no authority in its order supporting that standard. And, in fact, the defendants below did not even raise or argue that issue. You cited a few examples of financial figures, but does the complaint explain the overall impact that the restatement had on the financial picture of the company? Absolutely, Your Honor. And that would go to the third point why the District Court's order should be reversed, which is materiality, the importance of the financial statements essentially to the investing public. And that's done in two ways by the complaint. First, it's done by defendants' own admission that the financial statements as a whole were unreliable. Defendants admit that at the end of the class period in November of 2008. Defendants also admitted at that time that the financial statements were not prepared in accordance with generally accepted accounting principles. Those are the principles that are required, in fact, required by the Securities and Exchange Commission of all public issuers for the submission of the financial statements. So this is obviously important or material to investors. Nothing could be more important to investors than having reliable financial statements that are compliant with generally accepted accounting principles, which I may from time to time refer to as GAAP, G-A-A-P. In fact, this court in U.S. v. Reyes stated that only public companies only restate financial statements when the errors are material to the financial statement as a whole. So that's the first reason why we believe we've clearly pled materiality. There's a second objective reason as well, which is just looking at how the market itself reacted to the disclosure that the financial statements were not reliable. The stock price of Southwest Water dropped that day 36 percent. The company lost 36 percent of its market capitalization in a single day as a result of that statement. So that alone tells us that the stock market thought this information was very, very important. And in addition, the analyst... The district court did some analysis, though, of some percentages. The district court did. The district court did not take into account the factors that I've just laid out. And the second factor I was going to lay out also was that the analysts who followed Southwest Water also reacted immediately. One with a firm called Bree and Murray immediately downgraded the stock to a sell. Another analyst dropped coverage of the company due to what he called the lack of financial clarity. So those are additional factors. The district court's analysis, however, took none of this into consideration. And again, here on materiality, I'd also add that the defendants did not even raise this issue below as well. This was something that the district court did on its own. And with all due respect to the district court, the mathematics that it undertook were flawed because it used the wrong numbers. And even using the correct numbers, for example, the overstatement of revenue figures was much more significant than what the district court listed in the order as well. Now, I know that, counsel, that you believe there was intent to defraud here and that you also have your 10B claim. But just focusing on Section 11 for a second. Yes. If the misstatements and corrections were a result of the fact that they were, you know, all these different regional systems with different accounting systems and the like, and it was just hard to implement their plan to make things right, is that enough for your Section 11 claim? Those factors would be completely irrelevant to our Section 11 claim. Section 11 requires no pleading or proof of intent, impure heart, ill motive. It is, as to the issuer, it is a strict liability standard. If the statements were false and material, the company is liable with essentially no defense to that. As to the individuals, there is an affirmative defense, but that is not something that needs to be pled by the plaintiffs and something that would not come out in a 12B6 motion as well. Let's look at 10B. Certainly, Your Honor. So with respect to the 10B claim, that happens. I guess let me just start you off to get you, because the time is going to go quickly. Many of the facts that you allege support an inference of scienter but might also support inference of negligence. I mean, can you address that, please? Absolutely, Your Honors. And what I'd like to do, and I know my time is limited this morning, but I'd like to focus the Court's attention very specifically on what we believe are the most strong and direct facts that we've pled that demonstrate that the defendants acted with deliberate recklessness or a conscious disregard. As the Court knows, there's more than one way to plead scienter in this circuit, and I'd like to focus on that. This 10B claim is about a public company that issued admittedly false financial statements to investors and represented them to be reliable and GAAP compliant when there was not a reasonable basis to do so because Southwest Water lacked sufficient internal controls to ensure the reliability of the financial statements. The complaint does allege specific facts almost exclusively based on defendants' own admissions, demonstrating that defendants were consciously reckless as to the truth or falsity of their statements that they made to the investing public. And there's really three categories of statements that I'd like to quickly go over with the Court. First is the allegations which demonstrate that defendants had actual knowledge, they knew, of internal control problems at Southwest Water both before and during the class period. In a 2004 10K, which was signed by two of the individual defendants, Orbeek and Garnier, they admitted that material weaknesses existed and that internal controls over financial reporting were not effective. In the first three quarters of 2005, defendants Garnier and Clary admitted that there was a single internal control weakness which related to purchase accounting for acquisitions. Well, let me direct you to a couple of facts that I think maybe undercut your assertion because I'd like to get your response to them. First, Southwest made public statements about how bad its accounting system was during the class period and presumably caused investors to scrutinize their statements. How does that support, I guess, Scienter? And then also the confidential witnesses said that the company was constantly meeting, trying to solve the problem. Again, how does that support the inference of Scienter? Your Honor, I actually believe that the statements, whether they were public or private, with regard to the acknowledged internal controls problems, support Scienter, allegations of Scienter, rather than undermine it. Because it shows that, number one, that the defendants had an awareness of the problems, and number two, throughout the class period, they did not fully disclose the full impact and scope of the pervasive internal control problems that the company ultimately did in July of 2009. So they had a consciousness that they had problems. They disclosed some difficulties, but as I will hopefully get to in a moment, the truth of the matter was that they had pervasive, fundamental control problems that went to the very heart of the company's ability to report accurate, DAP-compliant financial statements that the investing public could rely upon. They simply did not. You suggest that accounting errors were obvious, and I'm still not sure I understand what they even were. Can you explain the errors and why the errors would have been obvious to someone in the defendant's position? Well, the errors, as we've alleged in the complaint, the specific detail of the financial statement errors went to accounting issues that are longstanding. They had to do with how the company accounted for acquisitions that it was made, how it attributed goodwill, allocated goodwill to those acquisitions. We've alleged in the complaint both that they were either simple or many of them were longstanding principles so that they were not overly difficult to determine or unearth. And what's more, the theory behind the case, Your Honor, is not just that there were these accounting problems, but that because of the control environment that they had, these defendants were not in a position to know whether the financial statements they were issuing to the investing public were accurate or not. Essentially, they had such pervasive control problems that I would just like to quickly point out a few of them. They are so fundamental. Defendants admitted that they did not maintain an environment that consistently emphasized strict adherence to GAAP. They admitted they lacked personnel in the areas of internal audit, finance, accounting, with appropriate accounting knowledge, experience, and training. But isn't that consistent with a decentralized and poorly run accounting system? It may well be, Your Honor, but it's also not inconsistent with a conscious disregard or recklessness when you issue financial statements to the investing public in this environment. And I've only picked off a few of these issues, including they admitted they didn't maintain effective control until the application of GAAP commensurate with financial reporting requirements. This is the essence of what a public company must do. It must report accurate financial information to the investors. And not only did they have prior knowledge that they had problems with this issue, and not only did they admit at the end that these issues were pervasive, going on for 14 consecutive quarters, three and a half years, but during the class period, the individual defendants, pursuant to their Sarbanes-Oxley obligations, certify that they carefully reviewed internal controls quarter after quarter for 14 consecutive quarters, only three of which did they disclose minor control problems. What were they looking at? But weren't the errors related to specific regions from what I recall? Yes, Your Honor. And so doesn't that strengthen or I guess bolster the suggestion that the errors were caused by decisions made outside of the corporate headquarters? That may be the case, Your Honor. But, again, that is not inconsistent with their obligations under the federal securities laws to report accurate financial information. It may be that their inferences that they just messed up. It was difficult. They were decentralized. But if you have equal inferences of both, who wins? Plaintiffs win clearly under TELADS. The United States Supreme Court made that crystal clear, that in order for the defendants to prevail on the motion to dismiss, their inference must be more compelling. If the inferences are equal, if they are in balance, roughly, then the motion to dismiss must be denied. Your Honors, I see my time for rebuttal is just about here. Thank you. May it please the Court. Robert Brownlee on behalf of the appellees and defendants. This case involves an accounting restatement by a public company and really nothing else. That comes straight from the reading of the complaint. Courts have universally recognized that a restatement alone has never been sufficient to plead a Section 10b claim. In this case, it is also not enough to plead a Section 11 claim on behalf of participants in a dividend reinvestment plan. On this appeal and below, the plaintiffs' arguments have not really focused so much on what they have pled, but rather excuses for why they have not pled more. Here, the District Court properly dismissed the plaintiff's Second Amendment complaint and we respectfully request that the dismissal be affirmed. Today, I'd like to focus my arguments on the scienter issue related to the 10b claim and then with respect to the Section 11 claim, I would like to focus on the lack of falsity and materiality pled in the complaint. Very briefly, this case involved Southwest Water Company, which was a small public company during the times relevant to this case, grew fairly rapidly through the acquisitions of even smaller companies, for the most part municipal water agencies located in the south and southwest. The plaintiffs allege that for a remarkable period of time from May 10, 2005, through November 10, 2008, that there was a scheme to commit fraud, that financial statements were repeatedly falsified and filed. But unlike the vast majority of securities cases involving a restatement that finds themselves in court, in litigation, this is not a restatement that involves recognition of false revenues. It doesn't involve phony contracts. It doesn't involve recognition of revenues. Isn't the fact that the financial information was restated sufficient evidence to show that the original statements were materially false? By the time the company did the restatement at the end of the class period, which covered a number of accounting periods, the errors were material, requiring a restatement. When I get into the argument with respect to Section 11, there's no way to tell from the complaint whether or not during any particular period in this class period whether the errors were material. And that's important in this case, as opposed to the typical Section 11 case, which involves an initial public offering or a secondary public offering where the shareholders buy the stock all at once, and there is no question what is at play, what financial statements are at issue in connection with those registration statements. Here, you have a dividend reinvestment plan. Okay. I guess, so you don't really dispute that the restatements, I mean, and the fact that you had to do that, I mean, that the financial statements were false? The restatements were required because the earlier financial statements were in error. Were false. Were false or in error. Okay. But the issue here, and there were two issues here, and this is an issue more for the Section 11 claim as opposed to the Section 10b claim, but the issue with respect to the Section 11 claim, because this didn't involve an IPO or a secondary public offering, but rather shareholders opting to receive stock as opposed to cash when the company paid a dividend need to look at, and the courts say, the standard for determining materiality for purposes of Section 11 is whether the misstatements were important and would have misled the investor about the particular investment at the time it was made. So material. Right. Okay. So the two main requirements for the Section 11 are falsity and materiality. Right. Do you agree? Yes. Okay. So we know they were false. Let's talk about materiality. Right. Okay. Why or how were they not material? Clearly, by the end of the class period, in November 2008, the accumulated errors were material enough to require a restatement. It is impossible to determine from the complaint whether at the beginning of the class period, when the company issued a dividend, whether that error would have been material to the investor. You can't tell that because, number one, the complaint doesn't even allege when the dividends were paid. So you don't know from the complaint when the transactions occurred. Unless you know when the transactions occurred, and unless you know what was being told to the market and what was subsequently corrected for the market, you can't determine whether or not for that particular transaction, whether it was material. Materiality can't be determined in the abstract where some fictitious investor. It's for the investor with respect to the investment at play here. Isn't that a class definition issue then as to who falls within the class of people who are affected? I mean, if some shareholders, you're right, it may not have mattered at all early in the process, but people at the end who are taking stock instead of cash dividends are basing it on two years of false statements and the like, wouldn't they be entitled to a presumption of materiality? It's a pleading issue, Your Honor, because the obligation of the plaintiffs, because this case complaint clearly sounds in fraud, they have to meet the obligations of Rule 9b. And Rule 9b requires them to identify the false statements, explain with particularity why the statements were false, and the circumstances of the falsity. I know you focus on the pleading, but let me ask you, do you have an argument why the financial statements were immaterial? The argument, Your Honor, is by the end. The accumulated errors were material. You can't tell from the complaint because the allegations aren't there. What was material? Let me ask you this. Maybe this is more clear. Do you have an argument that the figures highlighted in the complaint were somehow taken out of context or they are significant or insignificant when compared to other numbers? I'm just trying to understand your argument with respect to the materiality. You say it's not sufficiently pled. We have the financial statements, and I'm trying to figure out if you are saying in some way that they took those figures out of context or that they were somehow not relevant or significant. Well, first of all, the plaintiffs admit that the numbers in their complaint aren't correct, that they made errors. But putting that aside, Your Honor, the problem is, and this is particularly during the up to the last three quarters of the alleged class period, there is no explanation of how the numbers were false. All they allege were what the company publicly reported. They didn't say, for example, in May 2010 or thereabouts when the 10-Q was filed, how much of the earnings were restated. They don't break it down. They don't say how much it occurred. More importantly, they don't even say, because I'm focusing this on Section 11, they don't say when the dividends were issued. So you can't tell from the complaint, and they could ask their clients. They could have asked their clients many times, when did you get stock instead of dividends? It's not there in the complaint. You can't tell whenever the transaction occurred that underlies the Section 11 claim, what was material, what was not. Well, if the statement was not material, why didn't you file a correction instead of a, I mean, instead of what you file? All the company did at the end of the class period was file a single 10-K. It did not go back and restate particular Qs. It did not restate Ks. But you could have filed a correction, but instead you filed a restatement. Correct? By the time we got to the end, the accumulated errors required a restatement. I wouldn't be making this argument, Your Honor, that if at the end of the class period there was a secondary public offering or there was an IPO and then there was a restatement, you can say, ha-ha, on this date it was material. What I'm saying here, Your Honor, is for the purposes of Section 11, you have to look at when the transactions occurred and determine from the complaint whether or not the errors were material. And all they have done here is allege the company's historic public disclosures and then put at the end through a boilerplate allegation, this was all false and misleading because of the restatement. But if it's a pleading problem, shouldn't they be allowed to solve it with a third amended complaint? This precise issue was raised on the first amended complaint and they didn't address it. In fact, when I said at the beginning, their arguments primarily focus on excuses for why they haven't pled, they've essentially said, we can't tell you. But their burden here is to plead the circumstances of the fraud. And it's not enough for them to say, which is what they've essentially said, well, the defendants know, they can figure it out. But this court, en banc in Glen Fed, addressing the Rule 9b pleading standards say, it is not enough under 9b to put the defendants on notice of the claims. That's the function of Rule 8. Where Rule 9b applies, more is required. If I may turn to the Section 10b scienter portion of the argument. With respect to Section 10b and scienter, looking at this complaint and applying tell-abs or verifone or any of this court's precedences, when we look at this complaint from a holistic standpoint, and a lot of times in these cases, and I've been doing this for a long time, we start at an allegation by allegation level. But where this case really breaks down on scienter grounds is looking at it in total. It's a case where the plaintiffs admit the company disclosed before the class period it had material weaknesses in internal controls. It disclosed during the class period that the financial controls were inefficient, expensive, cumbersome, time-consuming, and largely manual. Now, they say the object of this fraud was twofold. One, to falsify the financial statements, and two, to mislead the market about the state of the company's internal controls. Under tell-abs, under verifone, the company or the court is supposed to consider plausible, non-culpable explanations for the conduct that's alleged here. If your object of your fraud is to mislead people that you've got terrific internal controls, it makes no sense whatsoever to tell the market that we don't have good internal controls. That whole theme, that whole set of facts alleging the complaint cuts against any inference of scienter. With respect... Well, I understand one of the errors, I guess, is that when the company acquired another company, it didn't take into account the fact that the equipment it acquired was not new. It seems like that might be a very basic mistake that should have been obvious to anyone reviewing the financial statements. What's your response to that? Well, first of all, it's a basic mistake made by somebody sitting in a municipal water district down in Texas, in Mississippi. By the time it's rolled up into the company's financial statements and gets to these individual defendants, that mistake isn't apparent. And there is not a single fact, not one fact alleged in this complaint that shows that any of the individual defendants or anybody in the corporate headquarters was aware of that error. There are no facts. So some of these issues were simple, but that doesn't mean that they were unknown to the company. The CEO of the company doesn't sit down. It's not a plausible inference that the CEO of the company looks at depreciation rates on something that's so simple. That's something that one can reasonably rely on people downstream to get right. What about the fact that, on the one hand, you're saying, the company's saying, boy, we really don't have good accounting. We're trying to make it better. We've instituted this program to make it better. But the consultant says they never financed the program correctly. They never put the resources in. They're paying lip service to it, but they're not doing it. Isn't that reckless disregard? First of all, we don't know exactly who this consultant is and what their bona fides are for making that opinion. The fact that the consultant is there, the fact that the consultant's there with a consulting firm working on the program puts the lie to that particular opinion that the company was addressing. I've seen companies hire people for show, but they ignore everything that the person says, and then they go back and say, well, we hired this person, and therefore it insulates us from allegations. And in those cases, there are allegations where that happened. In this case, there are no such allegations. All this person said, who doesn't say that any of these individuals were aware of the problems, and with respect to the individuals, what also makes this case implausible from a scienter's standpoint is the fact that the individuals worked for the company at different periods of time, in different capacities, and in order to believe their case, you'd have to assume that Mr. Granier, who was there first, came up with this scheme, told Mr. Swatek, where there's no allegations of any relationship, why he would disclose that he's committing fraud, get Mr. Swatek to buy into it when he has no incentive or motivation to do that, do that with respect to Ms. Clary and Mr. Morbek, and on top of that, there are not a single fact alleged in the complaint, not a single allegation showing that there's communication between those individuals at the corporate headquarters and the people down in Texas and Mississippi where these errors were being made. So... It's not clear from the press release. Did the statements here involve premature revenue recognition? None of them, Your Honor. They involved, for the most part, items on the expense side of the financial statements and the asset side of the balance sheet. It is not an area where people would go and try to tinker with the numbers in order to meet analysts' expectations. Like the Verifone case. Like the Verifone or... Some of them were actually too low and others were too high. One of the largest adjustments was the premature writing off of goodwill. So when the plaintiffs say that they all went one way, they clearly didn't. There were substantial errors that went the other way. So, in summary, if I may summarize, Your Honor, this is a case where, really, nothing more is alleged than the fact of the restatement. This isn't a case where people were out prematurely recognizing revenue, shipping phony goods, ignoring reports from regulators, the FDA, for example. This is a case where mistakes were made in the accounting. And if this case were sufficient to pass muster for pleading a securities claim, and you look at the allegations in this complaint, all a plaintiff would have to do is take a company's 10-Q or 10-K, slap a caption on it, file it with the court, and say, I've got a securities fraud case. This court has never had such latched pleading standards and it should not go to that depth at this time. Thank you. I just have a few points I'd like to make in response. First, with respect to Section 11 and Your Honor's questions about whether it was materiality sufficiently pled with respect to those claims. I, frankly, did not fully understand the argument and there are arguments in there that I have not heard before. But the truth is that the Section 11 and Section 11, Section 11 claim plainly pleads materiality. The registration statements for the two dividend reinvestment plan offerings specifically incorporate all of the subsequent SEC filings made by the company. Those subsequent SEC filings made by the company were the filings that the company admitted were materially false and misleading at the time that they were issued. That is the definition of a restatement. When you restate, you're admitting that the statements were materially false when issued. So those statements, you don't have to wait until the end of the class period to determine materiality. That was admitted when the restatement was conceded to and therefore materiality has been pled sufficiently throughout the entire scope of the class period. Second, with regard to the disclosure of internal control weaknesses during the class period, it was only the first three quarters of 2005 that the company disclosed any weaknesses in internal controls. For the balance of the class period, quarter after quarter, the company represented to the investing public that there were no deficiencies in its internal controls. While it did give a little indication that there were some issues with regard to billing systems and the like, the investing public was never put on notice of the full scope and extent of what the problems were. And that only came out after the end of the class period. And finally, with regard to the assertion that this complaint alleges nothing more than a restatement, well, that's just palpably not true. I would be the first person to admit that if all we had was a restatement, that we would not state a claim. If it was a restatement for a single quarter on a single narrow issue. But that's not what we have here. We have a restatement spanning 14 quarters, three and a half years. Your time is up. Do you want to take a minute to talk about 10B? Well, I was speaking about the 10B allegations with respect to the internal control weaknesses, Your Honors. I mean, what we have here specifically, and you've heard about intent and intent to defraud. Under the Ninth Circuit standard, deliberate recklessness is sufficient. And I understand under Verifone that you can't have a white heart, empty head allegation. There's got to be something more there. But there is more here. We've pled specific faxes to the defendant's knowledge during the class period of problems. We've pled specific faxes to what they were doing in terms of their Sarbanes-Oxley obligations. This house was burning down, this internal control house. The defendants knew that there was some flames or at least some smoke there. Yet quarter after quarter, they continued to represent to the investing public that here are our financial statements. They are reliable. They are GAAP-compliant. That, Your Honors, is deliberate recklessness. Thank you, counsel. Case disargued will be submitted.
judges: Lasnik, Reinhardt, Murguia